UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# 97 - 8020

Case No: _____

MAR-A-LAGO CLUB, L.L.C.,L.C.,

    Plaintiff,

vs

TOWN OF PALM BEACH,

    Defendant.

_____/

**CIV - HURLEY**

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

**NIGHT BOX**
**FILED**

JAN 7  1997

CARLOS JU____
CLERK, USDC / SDFL / WPB

### NOTICE FOR REMOVAL

Defendant, TOWN OF PALM BEACH, by and through its undersigned attorneys, files this Notice of Removal for the purpose of removing a civil action from the Fifteenth Judicial Circuit Court of the State of Florida to the above-styled Court, and as grounds would state.

1.   This suit is pending in the Circuit Court of the Fifteenth Judicial Circuit in Palm Beach County, West Palm Beach, Florida and this Notice of Removal is filed within the time provided by law.

2.   This action was commenced in the Palm Beach County Circuit Court on the 20th day of December, 1996, by the filing of a Complaint for Damages and Declaratory and Injunctive Relief, a true copy of which is attached hereto and marked Exhibit "A".

3.   The Summons and Complaint were served upon the Defendant, TOWN OF PALM BEACH, on December 20, 1996. A true copy of the Summons is attached hereto and marked Exhibit "B".

\ /
BR

4. There have been no additional pleadings filed to date in the above cause.

5. It affirmatively appears from the allegations of the Complaint filed by Plaintiff that this is a civil action which arises under the Fifth and Fourteenth Amendments to the United States Constitution and Title 42 of the United States Code, Sections 1983 and 1988. In addition the Complaint involves the application of the United States Constitution, Article I, Sections 1 and 8.

The allegations by Plaintiff of the Defendant's violation of its right to substantive due process, procedural due process, equal protection, unconstitutional taking and violation of the Commerce Clause, the Privileges and Immunities Clause and the Right to Travel, make it apparent that this action is one arising under the Constitution of the United States. When damages are sought in a complaint for alleged violations of substantive and procedural due process and equal protection under the law, the underlying cause of action is based on the remedies provided pursuant to 42 U.S.C. Section 1983.

Further, it affirmatively appears from the face of the complaint that Plaintiff intends to seek relief pursuant to a cause of action arising under the Constitution of the United States, in that Plaintiff seeks attorneys' fees pursuant to 42 U.S.C., Section 1988. Title 42 U.S.C., Section 1988, applies exclusively to federal questions arising under federal law. Section 1988 is only applicable in actions or proceedings to enforce provisions of

2

Sections 1981, 1982, 1983, 1985 and 1986 of Title 42 of the U.S. Code, Title IX of Public Law 92-318, or Title VI of the Civil Rights Act of 1964.

It is therefore clear, as a result of the relief sought by Plaintiff and from the allegations of the complaint, that this is a cause of action involving a federal question.

6.    This Court, therefore, has original jurisdiction of the above entitled action pursuant to 28 U.S.C., Section 1331, and removal of the action to this Court is proper pursuant to 28 U.S.C., Section 1441(b). Accordingly, Defendant seeks removal of this lawsuit from the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, to this Court.

7.    Written notice will be given to the adverse party of the filing of this Notice and a copy of the Notice will be filed with the Clerk of the Circuit Court of the Fifteenth Judicial Circuit of Florida, in and for Palm Beach County, Florida.

WHEREFORE, Defendant, TOWN OF PALM BEACH, prays that the above action now pending against it in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, be removed therefrom to this Court.

Dated in West Palm Beach, Palm Beach County, Florida, this _____ day of January 1997.

> JONES, FOSTER, JOHNSTON & STUBBS, P.A.
> 505 South Flagler Drive
> Post Office Box 3475
> West Palm Beach, FL 33402-3475
> Telephone: 561 659-3000
> Facsimile: 561 832-1455
>
> _____
> John C. Randolph
> Florida Bar No. 129000
>
> _____
> Margaret L. Cooper
> Florida Bar No. 217948

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument has been furnished to MARK F. BIDEAU, Esquire, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., 777 South Flagler Drive, Suite 310E, West Palm Beach, Florida 33401; and to PAUL RAMPELL, Esquire, 125 Worth Avenue, Suite 202, Palm Beach, Florida, 33480, by mail, this 7th day of January, 1997.

> JONES, FOSTER, JOHNSTON & STUBBS, P.A.
> 505 South Flagler Drive
> Post Office Box 3475
> West Palm Beach, FL 33402-3475
> Telephone: 561 659-3000
> Facsimile: 561 832-1455
>
> _____
> John C. Randolph
> Florida Bar No. 129000

4



IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.

CL 96 010812 AE

MAR-A-LAGO CLUB, L.L.C., L.C.,            )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )
                                          )
TOWN OF PALM BEACH,                       )
                                          )
        Defendant.                        )
                                          )
                                          )
_____ )



**COPY**
ORIGINAL RECEIVED FOR FILING

DEC 2 0 1996

DOROTHY H. WILKEN
CLERK OF CIRCUIT COURT
CIRCUIT CIVIL DIVISION

## COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

        Plaintiff, Mar-A-Lago Club, L.L.C., L.C. ("Mar-A-Lago"), successor to The Mar-A-Lago Club, Inc., by and through its undersigned counsel, respectfully files this Complaint against the Town of Palm Beach (the "Town") for damages, injunctive and declaratory relief and in support thereof states the following:

### SUMMARY

        1.      This action seeks to enjoin the illegal, illogical and unconstitutional decision of the Defendant, The Town of Palm Beach (the "Town") and its Council reached on November 20, 1996 to deny the application for Special Exception submitted by the Plaintiff, seeks to determine the constitutionality of the Comprehensive Plan of the Town and enjoin the further application of said Comprehensive Plan, seeks declaratory relief and the recovery of One



Hundred Million Dollars ($100,000,000) in damages incurred by Plaintiff as a result of the actions of the Town.

### THE PARTIES

2.      Plaintiff, Mar-A-Lago Club, L.L.C., L.C., successor in interest to Mar-A-Lago Club, Inc., is authorized and licensed to do business as a private club in the Town of Palm Beach, Florida ("The Mar-A-Lago Club"). The Mar-A-Lago Club's facilities include the only National Historic Landmark in Palm Beach, and the Club is the only private social club in the history of Palm Beach which expressly welcomes members and guests regardless of religion, race, sex, marital status, creed or handicap. It is the first Palm Beach club to develop a heterogeneous group of members and guests. During its first season, The Mar-A-Lago Club hosted charitable events which raised approximately $7,000,000. Contrary to predictions by opponents at the time of its initial approval, The Mar-A-Lago Club causes no traffic, noise or other nuisances of any kind by its full-capacity operations. The Mar-A-Lago Club is owned by Donald J. Trump ("Trump"), who has spent millions of dollars restoring and maintaining its historic property.

3.      Defendant, the Town of Palm Beach, is a municipal corporation organized under the laws of the State of Florida (the "Town"). The Town, through its Council has been a constant opponent of Plaintiff, and its owner, Trump, and in particular seems most interested in stifling Plaintiff's open membership policy. The Town has a long history of aiding and abetting discrimination through support of decades-old clubs like the Bath and Tennis Club (the "BAT Club") and the Everglades Club (the "Everglades Club") which maintain notoriously discriminatory policies.

2

4.      Jurisdiction is proper in this Court pursuant to Article V of the Florida Constitution; and §26.012(2)(3) and 86.011, Florida Statutes.  The damages sought in this Complaint exceed One Hundred Million Dollars ($100,000,000).

5.      All conditions precedent to the filing of this action have occurred or have been waived.

## FACTS

6.      In the early 1920's, Marjorie Merriweather Post (then Mrs. Edward F. Hutton) began to search between Lake Worth and the Atlantic Ocean for a coral reef of proper location and size to sustain a major structure.  She found such a site and commissioned the construction of a 128-room, 110,000 square-foot mansion in the Hispano-Moresque style--the prevailing architectural style of the villas of the Mediterranean.  The entire Mar-A-Lago property comprises approximately 20 acres, and consists of the main house, guest suites, several service and secondary structures, and sports facilities.  The property runs from Lake Worth (the Intracoastal Waterway) to South Ocean Boulevard.  An underground tunnel runs from the main property, under South Ocean Boulevard to the beach on the Atlantic Ocean, where several other private facilities are located.  The site on which Mar-A-Lago is located is considered to be one of the most valuable and historic parcels of land in Florida.

7.      On July 11, 1979, the Town of Palm Beach, by Resolution No. 26-79, pursuant to Ordinance, designated Mar-A-Lago a Town of Palm Beach Landmark.

8.      In December, 1985, Trump purchased Mar-A-Lago from its previous owners.

9.    Soon after Mar-A-Lago was purchased, it became apparent that the single family zoning of the property was not a logical or rationale use. Therefore, Trump sought economically feasible uses for the property, first seeking to subdivide the property (which was unreasonably rejected by the Town notwithstanding the Town's previous approval of a similar plan) and later to establish a private, non-discriminatory social club which would both help fund further renovation and help preserve this unique and historic property.

10.   The Town, through its Council, expended tremendous energy to stop Trump from establishing The Mar-A-Lago Club in order to preserve the status quo and protect the economic and social interests of established clubs such as the BAT Club and the Everglades Club.

11.   In August, 1993, after a prolonged approval process, the Town approved Trump's application for a club conversion, but conditioned its approval, through a Declaration of Use Agreement, on numerous outrageous and unnecessary constraints, including the prohibition of published photography, the requirement that all club usage be preceded by advance reservations, a personal guaranty by Trump of the payment of taxes, insurance and maintenance and a limit of 390 individuals at special events. A copy of the Declaration of Use Agreement is attached as Exhibit "1." All of the various constraints were based on 1993 fears that have proven to be irrational, illogical and unnecessary. For example, opponents of The Mar-A-Lago Club predicted that the club conversion would adversely affect property values in the neighborhood. In fact, the value of neighboring properties has increased since the opening of The Mar-A-Lago Club. The regulations imposed upon Mar-A-Lago were unprecedented. No other private social club in the Town has ever been subject to remotely similar restrictions.

These regulations, which single out Mar-A-Lago, are clearly calculated to make it impossible for Mar-A-Lago to fulfill its mission of destroying the Palm Beach status quo of discriminatory social clubs.

12.     The club conversion of Mar-A-Lago fulfilled two great ideals.  First, it established the first club with a heterogeneous membership in Palm Beach.    Decades of discriminatory segregation in private social clubs have been ended.  Second, the Club generates revenue that enables the historic landmark to pay for itself without reliance on any one individual or institution.   After Mrs. Post's death, no individual or institution (not even the United States government) would carry the enormously expensive burdens of its preservation, until Trump purchased it and fully and fabulously restored it.

13.     The Mar-A-Lago Club is progressive by Palm Beach's social standards because of its open door policies.  While charities hold events open to everyone at The Mar-A-Lago Club, the Everglades Club and BAT Club prohibit charitable events in order to maintain their discriminatory policies.  The Mar-A-Lago Club helps raise millions for charitable causes each year.

14.     In addition to being a social threat to Palm Beach's discriminatory status quo, The Mar-A-Lago Club is economic competition to the Everglades Club and BAT Club. Members of the Everglades Club and BAT Clubs, including members of the Town Council who ruled on this matter, have attempted continuously and surreptitiously to thwart this free enterprise and competition.

15.     In May, 1996, The Mar-A-Lago Club filed the Application for Special Exception No. 18-96 to the Town, which is at issue in this case, requesting the removal of the

ridiculous and unnecessary regulations which applied to it, but to no other club in Palm Beach.
The Application is attached as Exhibit "2."  The Town then embarked on a series of actions
designed to insure that the relief requested would not be granted.  The Town initially scheduled
a hearing on a date it knew that Mr. Trump could not attend, May 29, 1996, then denied The
Mar-A-Lago Club any hearing for almost four (4) months, until September 16, 1996.  Normally,
zoning applications in the Town of Palm Beach are heard  one (1) month after filing.  The
conduct at the hearing of several of the Council members who sat in a quasi-judicial capacity
at the hearing exhibited extreme bias against Mar-A-Lago from the start.

16.     The restrictions imposed upon Mar-A-Lago which apply to it and to no
other private club in the Town include, but are not limited to:

A.     . . . The use of guest suites shall be limited to a
maximum of three (3) non-consecutive seven (7) day periods by
any one member during the year. . .

*Article II, Paragraph 2*

B.     Photography at the Club shall be conducted in a
manner consistent with the rules and regulations governing other
clubs in the Town.  This shall include but not be limited to the
prohibition of film making, movie producing, magazine feature
photography, newspaper photography, photography for public
relations purposes for individual members and/or guests and other
commercial photography and the like.

*Article II, Paragraph 4*

C.     The Land, as described herein, shall be
considered as one (1) parcel and no portion thereof may be sold,
transferred, devised or assigned except in its entirety, either
voluntarily or involuntarily, by operation of law or otherwise.
This provision shall not preclude the dedication of right-of-way for
road improvements required by governmental authority.   No
portion of the Land or structures thereon shall be condominiumized
or changed to a cooperative form of ownership.  This provision

shall survive the use of the property as a club and shall apply to subsequent use of the property.

*Article III*

D.    At least fifty percent (50%) of the members of the Club shall consist of individuals who maintain residences in the Town of Palm Beach or have places of employment in the Town of Palm Beach. An affidavit verifying this fact, and the guest suite occupancy interval and frequency limitations, and compliance with Article IX relating to establishment of the fiduciary account, shall be filed with the Town on an annual basis on or before a date each year which coincides with the date the Certificate of Occupancy is issued to the Club. The membership in the Club shall be limited to five hundred members; provided, however, such number may be adjusted in the reasonable discretion of the Town. In the event the trip generation limitation set forth in Article VIII is reached, membership at that time shall be frozen until measures are taken to reduce daily trips.

*Article VII, Paragraph 1*

E.    All Club facilities such as dining, tennis, and golf shall require advance reservations.

*Article VII, Paragraph 3*

F.    The total trip generation of the Club shall be limited to three-hundred-thirteen (313) daily trips based on an annual average of daily trips of the Club. Traffic monitoring by a method approved by the Town for the Club shall be performed by the Club on a daily basis and shall be available to the Town upon request. Monitoring devices approved by the Town shall be in place prior to issuance of a Certificate of Occupancy. The results of the monitoring during the first and third quarters of each year shall be averaged to determine the average annual daily trips of the Club.    The Club shall reimburse the Town for the reasonable expenses incurred by the Town's traffic consultant in reviewing the monitoring results.

*Article VIII, Paragraph 1*

G.        The monitoring results shall be supplied to the Town and the Palm Beach County Traffic Division to assure compliance.

*Article VIII, Paragraph 2*

H.        The Club shall utilize a shuttle van to transport approximately forty percent (40%) of the Club's staff to assist in complying with the three-hundred-thirteen (313) daily trip limitation on an average annual basis.

*Article VIII, Paragraph 4*

I.        Special events shall be limited to three-hundred-ninety (390) individuals and shall occur strictly on weekends or after 6:00 p.m. on weekdays.  At no time shall more than one (1) special event occur at the same time at the Club.  Special events at the Club shall be coordinated with special events at the Bath and Tennis Club so that special events at the two (2) clubs scheduled on the same day shall commence at least one (1) hour apart, so that the overlap of peak traffic during special events is reasonably avoided. Tents may only be used for special events upon approval of the Town Building and Zoning Director after presentation of satisfactory assurance that the attendance limitations will not be exceeded.

*Article VIII, Paragraph 6*

J.        Valet parking services shall be used at all times for all Club events.  Town of Palm Beach off-duty police shall be engaged to supervise traffic at all special events.  Parking shall occur only in those areas so identified in the Plan and shall provide two hundred fifty-two (252) spaces.  Any grass areas to be used for parking as well as the existing cart path shall be stabilized with "grass-crete" or an equivalent treatment.  Said cart path shall be eighteen (18) feet in width.

*Article VIII, Paragraph 8*

K.        Until the Club operates at a break-even point, or profitability for three (3) consecutive years, the Owner shall pay any and all real estate taxes, maintenance costs, insurance

premiums, and similar expenses to the extent the Club is unable to meet such obligations.

*Article IX, Paragraph 1*

      L.     A separate fiduciary account shall be established by the Club into which ten percent (10%) of all gross revenues from the guest suites shall be deposited and used exclusively for maintenance and restoration purposes.

17.    The Declaration of Use Agreement provides in Article II by its very terms that it may be amended. It is thus clear that both the Town, and the Plaintiff contemplated changes to the Declaration of Use Agreement as the use unfolded. What has in fact occurred since 1993 demonstrates very clearly that the hysteria present when the Declaration of Use Agreement was first drafted which caused the Town to demand the restrictions which are at issue in this case did not occur. Indeed, none of the parade of horribles which allegedly concerned the Town when Mar-A-Lago was first approved occurred. Instead, the Club has had no negative impact on the Town. Thus, it is, and was appropriate to amend the Declaration of Use Agreement as requested.

18.    The BAT Club is located across South Ocean Boulevard from Mar-A-Lago and both are included in a large residential estate zoning district in which private clubs are allowed as a special exception usage. The BAT Club, like many other private clubs in Palm Beach, has a much smaller physical plant and much less acreage than does Mar-A-Lago, but has many more members. The BAT Club has none of the regulations imposed upon the Plaintiff.

19.    On November 20, 1996 the Town improperly denied Plaintiff's application for equal treatment. President Smith, Mayor Ilyinsky, Mr. Wyett, and Mr. Shaw, on information and belief failed and/or refused to properly and fully disclose ex parte

**9**

communications in which they jointly and/or separately engaged prior to voting on the application. Despite Plaintiff's request in the form of letters dated October 1, 1996 and November 1, 1996 from Plaintiff's attorney, Paul Rampell, Esq., attached as composite Exhibit "3", President Smith and Mayor Ilyinsky refused to recuse themselves even though they hold ownership interests and financial stakes in competing Palm Beach clubs--the Everglades Club, and/or the BAT Club--and should not act in official, quasi-judicial capacities as members of those competing clubs. The Town's denial is not based on any substantial competent evidence and can only be understood by the logic of those seeking to maintain the status quo.

20. The Town Council which considered this matter was infected with bias and direct conflicts of interest so substantial as to violate Plaintiff's Due Process rights under the Florida and United States Constitution. Specifically, but without limitation:

A. Lesly S. Smith is President of the Town Council and has consistently opposed Plaintiff at every opportunity using every resource at her personal or official disposal. She even involved her personal attorney, Chopin, in the hearing to cross-examine the Club's witnesses. President Smith, as an owner and member of the competing discriminatory BAT Club and the Everglades Club, has a direct and irreconcilable conflict of interest. Any actions she takes which benefits Mar-A-Lago directly impact upon her clubs. Further, President Smith had made up her mind to reject the Plaintiff's request long before the "hearing" and determined that she would play "hard ball" before hearing a single fact.

B. Paul Romanov Ilyinsky is Mayor of the Town of Palm Beach ("Mayor Ilyinsky"). Mayor Ilyinsky, as an owner and member of the competing discriminatory BAT Club, has a financial conflict of interest in even participating in deliberations involving The

10

Mar-A-Lago Club. During these quasi-judicial proceedings and prior to deliberations, Mayor Ilyinsky took the highly improper step of writing a letter to the editor of the <u>Palm Beach Daily News</u> expressing opposition to The Mar-A-Lago Club while he was sitting in judgment on its application.

           C.      Allen S. Wyett is a member of the Town Council of the Town of Palm Beach ("Mr. Wyett"). Mr. Wyett campaigned for Town Council with promises to oppose Mar-A-Lago and has opposed every aspect of every request made by Plaintiff. During these quasi-judicial proceedings and prior to deliberations, Mr. Wyett also wrote a letter to the editor of the <u>Palm Beach Daily News</u> expressing opposition to The Mar-A-Lago Club which was prejudicial to its Application. Mr. Wyett has a further conflict of interest in that he has a residence at Trump Towers in New York and has sought special favors from Trump relating to his residence which have been rejected.

           D.      Leslie Shaw is a member of the Town Council of the Town of Palm Beach ("Mr. Shaw"). Mr. Shaw is a patron at The Mar-A-Lago Club who has harassed club management for special summer privileges and has otherwise attempted to control the internal operations of The Mar-A-Lago Club. Mr. Shaw, in resentment and retaliation for refused special status, abused his quasi-judicial office by acting against The Mar-A-Lago Club in its most recent application to the Town.

           21.      The bias which infected this proceeding is highlighted by the following colloquy between Mayor Ilyinsky and one of Plaintiff's attorney, Mr. Green:

Mayor Ilyinsky:      "...to listen to this trash coming from you and Mr. Rampell frankly is going to make me throw up".

11

Mr. Green:        "Do so sir".

Mayor Ilyinsky:     "I may do so on you".

No hearing conducted by individuals who had clearly prejudged the case before the hearing and who held such animus toward Mr. Trump and Plaintiff could come close to meeting the due process guaranteed to the Plaintiff.

     22.     All of these actions violate the substantive and procedural due process required to be provided in a quasi-judicial forum.

     23.     The Town acted in writing upon The Mar-A-Lago Club's Application by letter dated November 27, 1996 which is attached as Exhibit "4." The Town approved three (3) changes to the Declaration of Use Agreement and unlawfully rejected eight (8) changes requested and refused the overall equalization of treatment of The Mar-A-Lago Club.

     24.     The Mar-A-Lago Club presented overwhelming substantial competent evidence in support its Application. The Town neither presented, received nor reviewed substantial competent contradictory evidence.

     A.     The Town rejected The Mar-A-Lago Club's request to be relieved of traffic monitoring equipment and reporting requirements which apply to it alone and no other property in all of Palm Beach County, not just the Town of Palm Beach. This equipment and reporting has proven to be unnecessary, especially since the Club has caused no traffic congestion even during its peak usage. The Town offered no evidence to rebut the Traffic Impact Analysis by Kimley-Horn and Associates, Inc. dated October 10, 1996, which supported the removal of the Declaration of Use Agreement's requirement that automotive traffic be limited to 313 average annual trips. Palm Beach County, in essence, agreed that the Mar-A-

Lago Club's impact on traffic was insignificant. The Town conceded that The Mar-A-Lago Club has never exceeded the average number of daily trips allocated to it.

          B.        The Town refused to lift the limit of 390 people per special event at The Mar-A-Lago Club under the Declaration of Use Agreement. The Mar-A-Lago Club cannot even have a full membership meeting of its presently allowable 500 members. Owners of private homes in this neighborhood, the same zoning district, can invite an unlimited number of guests to their homes for events which illustrates the lack of logic to this regulation and the violation of The Mar-A-Lago Club's equal protection rights. Indeed, Mar-A-Lago is and has been famous for the lavish and well attended parties hosted not only by Mr. Trump before the conversion, but by the Estate's original owner, Mrs. Post. No restriction existed on the number of guests which either Mr. Trump or Mrs. Post could host when the property was owned as a single family residence and, innumerable gatherings which would not be permitted under the restrictions currently in place, were commonly held when the property was used as a single family residence. Further, the Town's own experts conceded that there is no relationship between the number of members in a club and traffic congestion.

          C.        The Mar-A-Lago Club seeks to be regulated by federal, state and municipal law applicable to every club, not by peculiar 1993 regulations based on erroneous predictions. The "before" and "after" implications of the approval of the Application were modest, as can be observed in attached Exhibit "5," since the Club would remain subject to the limits of its Certificate of Occupancy and to extensive regulation under municipal law.

          D.        The Code of Ordinances of the Town states that one (1) parking space is required for every 4 members of the Club. Since The Mar-A-Lago Club has 252

13

parking spaces as part of its Certificate of Occupancy issued by the Town, it should be permitted a maximum of 1008 members, and an unlimited number of people attending events. Instead, the Declaration of Use Agreement imposes an arbitrary limit of 500 members. On information and belief, Club Colette, in Palm Beach, has over a thousand (1000) members which use its facilities which are far smaller than those available at The Mar-A-Lago Club. Club Colette has almost no parking. On information and belief, the membership at the Poinciana Club, also in Palm Beach, is over fifteen hundred (1500) individuals and it was approved after The Mar-A-Lago Club with no membership cap whatsoever. The BAT Club also operates with more members and a smaller physical plant.

E.      The Town refused to relieve The Mar-A-Lago Club of the limitation on usage of guest suites to three (3), non-consecutive seven (7) day periods and instead allow occupancy of up to ninety (90) days. The Town failed to set forth any factual basis for its denial. The Everglades Club has guest quarters without any occupancy limitations of any kind.

F.      Similarly, in the face of no evidence to support its conclusions, the Town rejected the Plaintiff's request to relieve Trump of the obligation to guaranty certain obligations of the Plaintiff. It is highly irregular to tie a regulation to an individual in this way.

G.      None of these regulations is warranted on the grounds that Mar-A-Lago is a landmark. The Deed of Conservation and Preservation of Easement, which is part of the hearing records, satisfies any concerns regarding preservation of the property and its architectural integrity. No other regulations are necessary to achieve such goals.

25.     The Town has been fully aware of the discriminatory policies of many of Palm Beaches social clubs for years and enriched the Everglades Club and the BAT Club for scores of years.  In the Comprehensive Plan of the Town of Palm Beach, dated October 23, 1989 and amended March 12, 1991, the Town unabashedly adopted into law the following:

> The Town will offer regulatory assistance to
> protect private sector recreation providers.

> Policy 2.1, Pg. VI-9

> In providing recreational amenities, the Town
> will ensure the continued relationship between it
> and public and private sector ventures.

> Objective 2, Pg. VI-8

26.     The Town illegally and unconstitutionally discriminates against its residents by including these private discriminatory clubs in meeting legally-mandated quotas for public recreation and open space.

27.     Plaintiff has been obligated to hire the undersigned counsel to protect its rights in this matter and is obligated to pay them a reasonable fee for their services.

## COUNT I

### Substantive Due Process

28.     Plaintiff incorporates herein by reference the allegations set forth above in paragraphs 1 through 27 as if such allegations were set forth in full herein.

29.     The Town's decision to deny the Plaintiff's Request for Special Exception deprives Plaintiff of constitutionally protected property rights for an improper purpose and by means which were arbitrary and capricious.

30.     As a result of the Town's violation of Plaintiff's substantive due process rights, Plaintiff has been damaged.

## COUNT II

### Procedural Due Process

31.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 27 as if set forth in full herein.

32.     The decision of the Town to deny Plaintiff's Application for Special Exception has deprived Plaintiff of constitutionally protected property interests without constitutionally adequate process.

33.     Specifically, but without limitation:

A.     The majority of the Town Council who voted to deny the amendment to the special exception had material conflicts of interest which prevented them from providing a fair and impartial hearing;

B.     Some members of the Town Council who voted to deny the amendment to the special exception engaged in ex-parte communications with people opposed to the request.

C.     Some members of the Town Council who voted to deny the amendment to the special exception made public statements and comments adverse to the Application before all of the evidence had been submitted and the Council had deliberated

16

proving that they had already completely made up their minds regarding the Application before even hearing the testimony.

34.     As a result of the denial of Plaintiff's procedural due process rights, Plaintiff has been damaged.

## COUNT III

### Equal Protection

35.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 27 as if set forth in full herein.

36.     The Town's denial of Plaintiff's Application for Amendment to Special Exception was an act of intentional and purposeful discrimination and denied Plaintiff equal protection under the law.

37.     The Town has singled out Plaintiff by imposing special conditions upon it which it has not imposed on other similarly situated institutions and which are not reasonably related to a proper governmental function.

38.     The Town's singling out of Plaintiff for disparate treatment was for an improper purpose, which included the support and enhancement clubs which purposefully discriminate and in which some members of the Town Council have ownership interests.

39.     As a result of this disparate treatment, Plaintiff's equal protection rights have been damaged.

17

1.    Award it compensatory damages in the amount proven at trial, including all fees, costs, expenses and pre- and post-judgment interest;

2.    Declare the Town's actions invalid, enjoin the Town from enforcing its denial of Plaintiff's Application for Special Exception, or from enforcing any of the challenged restrictions contained in the terms of the Declaration of Use Agreement;

3.    Declare the Comprehensive Plan of the Town invalid, unconstitutional and enjoin the Town from enforcing its terms;

4.    Declare unconstitutional the Town's requirement that 50% of the members of the Plaintiff be residents of the Town.

5.    Award it all its attorneys' fees pursuant to 42. U.S.C. 1988.

6.    Award it the costs of bringing this action;

7.    Conduct a jury trial on all issues so triable; and

8.    All other relief that is just and proper.

GREENBERG, TRAURIG, HOFFMAN,
LIPOFF, ROSEN & QUENTEL, P.A.

By: _____
MARK F. BIDEAU, ESQ.
Florida Bar No. 564044
DAVID M. LAYMAN
Florida Bar No. 294470
ELIZABETH A. ROGERS, ESQ.
Florida Bar No. 0062571
777 South Flagler Drive, Suite 310E
West Palm Beach, Florida 33401
(561) 650-7900

and

PAUL RAMPELL, ESQ.
Florida Bar No. 305901
125 Worth Avenue, Suite 202
Palm Beach, Florida 33480
(561) 833-1116

Alan J. Ciklin, Esq.
John C. Randolph, Esq.
Paul Rampell, Esq.

Please record and return to:
Paul Rampell, Esq.
125 Worth Avenue
Suite 202
Palm Beach, FL 33480

APR-05-1995  5:06PM  95-106768
ORB  8691 Pg  802

# DECLARATION OF USE AGREEMENT
by
## THE TOWN OF PALM BEACH,
## THE MAR-A-LAGO CLUB, INC.,
and
## DONALD J. TRUMP

Dated: _____AUGUST_____ 16 , 1993

**EXHIBIT** _1_

## TABLE OF CONTENTS

Page No.

ARTICLE I
Representation of Ownership                                      2

ARTICLE II
Club Use                                                        2

ARTICLE III
Unity of Title                                                  3

ARTICLE IV
Building Codes, Fire Protection and Utilities                  3

ARTICLE V
Principles of Preservation and Critical Features               4

ARTICLE VI
Mitigation/North Boundary                                      4

ARTICLE VII
Club Membership Limitations                                    4

ARTICLE VIII
Traffic/Special Events                                         5

ARTICLE IX
Liability and Abandonment of Club Use                          6

ARTICLE X
Reimbursement for Special Studies/Monitoring                   7

ARTICLE XI
Remedies for Violation                                         7

ARTICLE XII
Provisions to Run with Land/Recording                          8

ARTICLE XIII
Entire Agreement                                               8

ARTICLE XIV
Miscellaneous                                                  8

Acknowledgements                                           10

Consent and Joinder of Mortgagee                           13

Exhibit "A"                                                14

Exhibit "B"                                                15

Exhibit "C"                                          · 17

## DECLARATION OF USE AGREEMENT

THIS DECLARATION OF USE AGREEMENT is made and entered into this
10 day of AUGUST, 1993 by and between the TOWN OF PALM BEACH,
a Florida municipal corporation, 360 South County Road, Palm Beach, Florida 33480 (hereinafter
called the "Town"); and THE MAR-A-LAGO CLUB, INC., a Florida corporation, c/o Paul
Rampell, Esquire, 125 Worth Avenue, Palm Beach, Florida 33480 (hereinafter called the "Club");
and DONALD J. TRUMP, 725 Fifth Avenue, New York, New York 10022 (hereinafter called
"Owner"), which terms Town, Club, and Owner will include and bind the successors and assigns
of the parties, wherever the contact so requires or admits.

### W I T N E S S E T H:

WHEREAS, the land described in Exhibit "A" attached hereto and made a part
hereof, together with improvements thereon (hereinafter referred to as the "Land") and known as
Mar-a-Lago, is located within the municipal limits of the Town;

WHEREAS, Mar-a-Lago is unique and no other property in Palm Beach is like
it in any way;

WHEREAS, the Land is owned by the Owner, and the Owner shall convey title
to the Land to the Club;

WHEREAS, the Land is zoned RAA-Large Estate Residential and RA-Estate
Residential and private social clubs are allowable Special Exception Uses within such zoning
categories, subject to the approval of the Town Council;

WHEREAS, the Town has approved a Special Exception use for the Land as a
private social club subject to the conditions set forth herein and on the basis that the approval of
the Special Exception, in compliance with said conditions, will not be adverse to the public
interest;

WHEREAS, the Town has approved the site plan for the Special Exception on the
basis of the specific finding of the Town Council that said site plan meets the requirements of
the Town's Code of Ordinances relating to same;

WHEREAS, in approving the Special Exception and site plan, the conditions of
approval reflected herein are imposed in order to regulate the use and mitigate any impacts of the
Club, as well as to insure that said use shall not be adverse to the public interest; and

WHEREAS, all of the representations made herein are true and accurate and the
granting of the Special Exception and site plan review are conditioned upon the representations
made herein and all of the conditions herein imposed.

NOW THEREFORE, in consideration of the mutual promises set forth herein, it
is agreed as follows:

## ARTICLE I

## REPRESENTATION OF OWNERSHIP

Owner is the fee simple title holder of the property described in Exhibit "A" attached hereto, is in sole possession of the property, and has full right to enter into this Agreement and to bind the property and himself to the terms hereof. Owner's interest is subject only to mortgages of record and all holders of said mortgages, by execution hereof, hereby consent to the terms and conditions of this Agreement as evidenced by their signatures hereto. There are no covenants, restrictions or reservations of record that will prevent the use of the property as a club in accordance with the terms and conditions of this Agreement. No consent to execution, delivery and performance hereunder is required from any person, partner, limited partner, creditor, investor, judicial or administrative body, governmental authority or other party other than any such consent which already has been unconditionally given or referenced herein. Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby will violate any restriction, court order or agreement to which Owner or the real property is subject.

## ARTICLE II

## CLUB USE

The use of the Land shall be for a private social club in compliance with all of the information and exhibits included in the application not inconsistent with the terms set forth herein, and subject to such uses not inconsistent with the terms set forth herein, set forth in the Application for Special Exception No. 11-93 and The Mar-a-Lago Club: A Special Exception Use and Preservation Plan, as amended (hereinafter referred to as the "Plan") as submitted to the Town. Any usages not specifically set forth in the Plan (including, without limitation, docks, cabanas, gambling, helicopter operations or landings, animal circuses, and commercial or quasi-commercial uses) are excluded from the Town's approval of the Plan pursuant to that provision of the Town Code which provides that no subsequent deviation may be made from the application as approved by the Town Council except upon new application to and approval by the Town Council. Chapters 2, 3, 5, 6, 10 and 11 of the Plan are adopted herein by reference and made a part of this Agreement. Any additional uses of the Land shall be subject to approval by the applicable governmental authority including but not limited to the Town Council of the Town, the Landmarks Preservation Commission of the Town, the Architectural Review Commission of the Town, Palm Beach County, the State of Florida, the United States Government, and/or any agencies under any of the foregoing governmental authorities.

The guest suites as set forth in the Plan shall be limited to the use of Club members, shall be limited to ten (10) in number, shall not be open to the public, and shall not be advertised. No kitchen or other food preparation facilities shall be allowed in any of the guest suites. The use of guest suites shall be limited to a maximum of three (3) non-consecutive seven (7) day periods by any one member during the year. The operations of the Club shall not result in a nuisance to any of the neighboring properties.

2

ORB      91 Pg  807

Club facilities may be used only by members and guests of the Club.

Photography at the Club shall be conducted in a manner consistent with the rules and regulations governing other clubs in the Town. This shall include but not be limited to the prohibition of film making, movie producing, magazine feature photography, newspaper photography, photography for public relations purposes for individual members and/or guests and other commercial photography and the like.

## ARTICLE III

### UNITY OF TITLE

The Land, as described herein, shall be considered as one (1) parcel and no portion thereof may be sold, transferred, devised or assigned except in its entirety, either voluntarily or involuntarily, by operation of law or otherwise. This provision shall not preclude the dedication of right-of-way for road improvements required by governmental authority. No portion of the Land or structures thereon shall be condominiumized or changed to a cooperative form of ownership. This provision shall survive the use of the property as a club and shall apply to any subsequent use of the property.

## ARTICLE IV

### BUILDING CODES, FIRE PROTECTION AND UTILITIES

The Owner and the Club hereby grant and convey to the Town an easement over the Land in order to have access to the real property described in Exhibit "B" for the purpose of operating and maintaining a sewage pump station and force main located thereon, and for any other governmental purpose related thereto.

The existing sewage overflow (manually valved) shall be eliminated by the Owner at the Owner's expense. The Town and the Owner shall calculate the sewage generation utilizing generally accepted engineering methodology. If it is reasonably determined by the Town engineer that the existing pump station needs to be upgraded or replaced, it shall be upgraded or replaced by the Owner.

The air-conditioning condensate presently discharging into the sanitary sewer system shall be rerouted by the Owner into the storm sewer system.

Exfiltration trenches subject to approval by the Town engineer shall be constructed along a portion of the perimeter of the Phase B parking area as depicted in the Plan, and intermittently along the soil stabilized cart path to dispose of any increase in stormwater runoff from those improvements.

The existing tunnel to the beach area shall be evaluated for structural soundness by a Florida registered engineer and shall be improved as required. Owner and Club shall save,

3

defend and hold the Town, its officers, agents, representatives and employees, harmless from any and all claims which may arise as a result of the presence or use of the tunnel.

All applicable building, fire, and life safety codes shall be complied with prior to the commencement of Club operations. The Owner shall install an onsite fire hydrant as required by the Standard Fire Prevention Code. The Owner shall install an approved fire detection and extinguishing system.

All conditions herein are required to be met prior to commencement of Club operations and prior to the issuance of a Certificate of Occupancy for operation of a Club use.

## ARTICLE V

## PRINCIPLES OF PRESERVATION AND CRITICAL FEATURES

The principles of preservation and critical features specifically described in Chapters 2 and 3 of the Plan as amended shall be binding on the Owner and the Club and shall be enforceable in accordance with the terms of this Agreement.   Prior to any changes to the grounds or exterior of the buildings, the Owner and/or the Club shall obtain a Certificate of Appropriateness from the Landmarks Preservation Commission prior to issuance of any permits. The outdoor loggia shall not be structurally enclosed.

## ARTICLE VI

## MITIGATION/NORTH BOUNDARY

The Owner shall install a solid masonry wall and landscaping along the Northern perimeter of the Land to serve as a noise and light buffer for the residents of Woodbridge Road, according to the specifications attached hereto and made a part hereof as Exhibit "C".  Owner shall post surety in the amount of One Hundred Thirty-Five Percent (135%) of the cost of the improvements to be installed. The amount of the surety shall be provided through cost estimates from the Owner and shall be subject to approval by the Town.  The mitigation set forth herein shall be completed prior to commencement of Club operations and prior to issuance of the Certificate of Occupancy for Club use.  No additional lighting shall be installed in the parking area bordering the Northern boundary, and no accumulation of kitchen refuse shall be allowed to be held in this area.

## ARTICLE VII

## CLUB MEMBERSHIP LIMITATIONS

At least fifty percent (50%) of the members of the Club shall consist of individuals who maintain residences in the Town of Palm Beach or have places of employment in the Town of Palm Beach.  An affidavit verifying this fact, and the guest suite occupancy interval and frequency limitations, and compliance with Article IX relating to establishment of the fiduciary

4

account, shall be filed with the Town on an annual basis on or before a date each year which coincides with the date the Certificate of Occupancy is issued to the Club. The membership in the Club shall be limited to five hundred members; provided, however, such number may be adjusted in the reasonable discretion of the Town. In the event the trip generation limitation set forth in Article VIII is reached, membership at that time shall be frozen until measures are taken to reduce daily trips.

The Club shall not discriminate against any prospective member on the basis of race, color, religion, gender, national origin, handicap, age, or marital status.

All Club facilities such as dining, tennis and golf shall require advance reservations.

The Owners of Woodbridge Road residences shall have guest privileges at the Club without having to pay membership initiation fees; provided, however, they shall not be permitted to park on the Land while exercising their guest privileges. The foregoing shall run in perpetuity with the land of the Woodbridge Road residences.

## ARTICLE VIII

### TRAFFIC/SPECIAL EVENTS

The total trip generation of the Club shall be limited to three hundred thirteen (313) daily trips based on an annual average of daily trips of the Club. Traffic monitoring by a method approved by the Town for the Club shall be performed by the Club on a daily basis and shall be available to the Town upon request. Monitoring devices approved by the Town shall be in place prior to issuance of a Certificate of Occupancy. The results of the monitoring during the first and third quarters of each year shall be averaged to determine the average annual daily trips of the Club. The Club shall reimburse the Town for the reasonable expense incurred by the Town's traffic consultant in reviewing the monitoring results.

The monitoring results shall be supplied to the Town and the Palm Beach County Traffic Division to assure compliance.

The Club shall install, prior to commencement of Club operations and prior to issuance of a Certificate of Occupancy for Club use, a northbound left-turn storage lane to serve the Club's entrance drive on Ocean Boulevard, subject to obtaining a permit from the Florida Department of Transportation. The Town, Owner, and Club jointly shall obtain such permit at the sole expense of the Owner and the Club, and the Owner and Club shall hold the Town harmless from any liability caused by the initial design and construction of the turn lane. If, after the Club is opened it is reasonably determined by the Chief of Police in consultation with the Town's traffic consultant that a southbound right turn lane is necessary, the Owner and/or Club and the Town shall use their best efforts to obtain a permit and to install such right turn lane.

The Club shall utilize a shuttle van to transport approximately forty percent (40%)

5

of the Club's staff to assist in complying with the three hundred thirteen (313) daily trip limitation on an average annual basis.

Dining area seating shall be limited to seventy-five (75) seats.

Special events shall be limited to three hundred ninety (390) individuals and shall occur strictly on weekends or after 6:00 p.m. on week days. At no time shall more than one (1) special event occur at the same time at the Club. Special events at the Club shall be coordinated with special events at the Bath and Tennis Club so that special events at the two (2) clubs scheduled on the same day shall commence at least one (1) hour apart, so that the overlap of peak traffic during special events is reasonably avoided. Tents may only be used for special events upon approval of the Town Building and Zoning Director after presentation of satisfactory assurance that the attendance limitations will not be exceeded.

Site ingress and egress shall be as proposed in the Plan. The existing main entrance on Ocean Boulevard shall be used as an entrance only for both regular activities and special events at the Club; two (2) lanes of ingress shall exist on this entrance drive inside the gate. The existing service access on Ocean Boulevard shall be used as an exit only for both such regular activities and special events; two (2) lanes of egress shall exist on this exit drive inside the gate. A gate West of the existing Southern Boulevard gate shall be provided prior to commencement of Club operations and receipt of an occupational license for Club use, and shall be aesthetically identical to the existing gate, and the Owner and Club shall hold the Town harmless from any liability caused by the initial design and construction of the gate and driveway connection to Southern Boulevard. The new Southern Boulevard gate shall serve as the primary entry and exit for staff and service vehicles. During special events the new Southern Boulevard gate may be used by members and guests for exiting if deemed necessary.

Valet parking services shall be used at all times for all club events. Town of Palm Beach off-duty police shall be engaged to supervise traffic at all special events. Parking shall occur only in those areas so identified in the Plan and shall provide two hundred fifty-two (252) spaces. Any grass areas to be used for parking as well as the existing cart path shall be stabilized with "grass-crete" or an equivalent treatment. Said cart path shall be eighteen (18) feet in width.

## ARTICLE IX

## LIABILITY AND ABANDONMENT OF CLUB USE

Until the Club operates at a break-even point, or profitability for three (3) consecutive years, the Owner shall pay any and all real estate taxes, maintenance costs, insurance premiums, and similar expenses to the extent the Club is unable to meet such obligations.

A separate fiduciary account shall be established by the Club into which ten percent (10%) of all gross revenues from the guest suites shall be deposited and used exclusively for maintenance and restoration purposes.

6

If the Club use is unintentionally abandoned for a period of one (1) year after the Club has been in operation, or is intentionally abandoned at any time, the use of the Land shall revert to a single family residence and the ownership of the Owner. Bylaws and or documents relating to the Club membership shall include an agreement to be executed by Club members acknowledging their understanding of and consent to the terms of this agreement, and specifically agreeing to the reversion of the Land to Owner, and its return of the Land to use as a single family residence, in the event of intentional or unintentional abandonment of the Club use. Owner, Club, and Club members shall agree to hold the Town harmless from any liability or claim against the Town resulting from the enforcement of the terms of this Agreement, the reversion to single family use, the reversion to Owner or any other claims resulting therefrom.

Additionally, the three (3) paragraphs set forth above shall be set forth in the Articles of Incorporation of the Club and said provisions of the Articles shall not be amended without consent of the Town.

## ARTICLE X

## REIMBURSEMENT FOR SPECIAL STUDIES/MONITORING

The Owner or Club shall reimburse the Town for any reasonable costs incurred by the Town's consultants in their review of monitoring in compliance with the conditions set forth herein and the reasonable costs associated with the review of the Application.

## ARTICLE XI

## REMEDIES FOR VIOLATION

The Town shall have all remedies available at law and equity in order to enforce the terms of this Agreement including but not limited to (a) the Town's code enforcement procedures of the Code of Ordinances through the Code Inspector, Code Enforcement Officer, and Code Enforcement Board; and (b) the Town may initiate action to revoke the Club's occupational license pursuant to applicable provisions of the Town Code, and (c) all remedies otherwise offered in the Town's Code of Ordinances; and (d) injunction, specific performance, and any and all other equitable relief through the civil courts in and for Palm Beach County for the State of Florida. In the event the Town is required to seek injunctive relief, it shall not be required to post bond and it shall not be required to demonstrate irreparable harm or injury to secure an injunction to enforce the terms of this Agreement. Additionally, in the event of any breach, default or non performance of this Agreement, or any of its covenants, agreements, terms or conditions, the Town shall be entitled to recover its costs, expenses and reasonable attorneys' fees insofar as the Town prevails, either before or as a result of litigation, including appeals.

7

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this _10_ day of _August_, 1993, by **Paul R. Ilyinsky**, the Mayor of The Town of Palm Beach, a Florida municipal corporation, on behalf of the corporation.  He is personally known to me or has produced Florida Driver's License Number _____ as identification and who did not take an oath.

_Grace T. Peters_
Signature of Notary Public

_GRACE T - PETERS_
Printed Name of Notary Public

Commission No.: _CC26123/_

Commission Expires:

OFFICIAL NOTARY SEAL
GRACE T PETERS
COMMISSION NO. CC261231
MY COMMISSION EXP. MAR. 27,1997

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this _10_ day of _August_, 1993, by **M. William Weinberg**, the President of The Town of Palm Beach, a Florida municipal corporation, on behalf of the corporation.  He is personally known to me or has produced Florida Driver's License Number _____ as identification and who did not take an oath.

_Grace T. Peters_
Signature of Notary Public

_GRACE T. PETERS_
Printed Name of Notary Public

Commission No.: _CC26123/_

Commission Expires:

OFFICIAL NOTARY SEAL
GRACE T PETERS
COMMISSION NO. CC261231
MY COMMISSION EXP. MAR. 27,1997

10

IN WITNESS WHEREOF the parties have hereunto set their hands and seals the day and year first written above.

Signed, sealed and delivered
in the presence of:

_____
Peter B. Elell

_____
Peter B. Elell

_____
Peter B. Elell


Carolin Gallego

M. Laurie Smith

Carolin Gallego

M. Laurie Smith

TOWN OF PALM BEACH

By: _____
Paul R. Ilyinsky, Mayor

By: _____
M. William Weinberg,
President, Town Council

By: _____
Robert Doney,
Town Manager

THE MAR-A-LAGO CLUB, INC.

By: _____
Donald J. Trump,
President

By: _____
Donald J. Trump

## ARTICLE XII

### PROVISIONS TO RUN WITH LAND/RECORDING

This Agreement shall run with the Land and shall be binding upon the Owner, the Club, and their respective heirs, legal representatives, successors and assigns. This Agreement shall be recorded in the Public Records of Palm Beach County, Florida upon full execution by the parties hereto.

## ARTICLE XIII

### ENTIRE AGREEMENT

This Agreement represents the entire agreement between the parties as to its subject matter and it may not be amended except by written agreement executed by both parties.

## ARTICLE XIV

### MISCELLANEOUS

Wherever the word "laws" appears in this Agreement it shall be deemed to include all ordinances, rules and regulations as well as laws of the appropriate governmental authorities.

This Agreement may not be amended except by written instrument signed by all parties hereto.

Paragraph headings are inserted for convenience only and shall not be read to enlarge, construe, restrict or modify the provisions hereof. All references to numbered or lettered paragraphs, subparagraphs and exhibits refer (unless the context indicates otherwise) to paragraphs and subparagraphs of this Agreement and to exhibits attached hereto, which exhibits are by this reference made a part hereof.

This Agreement shall be binding upon the parties hereto and upon their successors, assigns, heirs and personal representatives.

In the event of the invalidity of any provision of this Agreement, same shall be deemed stricken herefrom and this Agreement shall continue in full force and effect as if such invalid provision were never a part hereof.

This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

8

within 20 days after service of this Summons on that Defendant, exclusive of the date of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

Dated this ____ day of _____, 1996.

DEC 2 0 1996

DOROTHY H. WILKIN
As Clerk of the Court

By:_____  **DAVID C. CRAIG**
As Deputy Clerk

(1)    This Special Exception will be heard before the Town Council on _____ ____, 199__ at 9:30 a.m.

(2)    Maps, plats or other exhibits are attached to the original on file in the Town Building Department.

(3)    Please be advised that Applicant's request for deferral of a Zoning Application may be denied by Town Council per Section 10.41(e) of the Town Zoning Ordinance. Further, any request by the Applicant for deferral or withdrawal must be received in writing seven (7) days prior to the subject Town Council meeting.

(4)    Warning ** A nonconforming use may not be intensified per Section 8.10 of the Town Zoning Ordinance 2-74 As Amended.

2

## EXHIBIT "A"

Being all that part of the North 610.00 feet of the South 1170.00 feet of Government Lot 2 of Section 35, Township 43, South, Range 43 East, in the Town of Palm Beach, Palm Beach County, Florida, lying West of Ocean Boulevard (State Road A1A) Right of Way and more particularly described as follows, to-wit:

Beginning at a point on the West face of an existing seawall on the East shore of Lake Worth, which point is 560.00 feet North of, measured at right angles, to the South line of Government Lot 2 of said Section 35; thence North 6•09'22" West along the West face of said seawall for a distance of 77.32 feet; thence North 10•23'23" East along the West face of said seawall for a distance of 539.50 feet to a point in the South line of BINGHAM-COPP TRACT, a subdivision recorded in Plat Book 18, Page 6, Palm Beach County Public Records; thence run South 88•12'07" East along the South line of said BINGHAM-COPP TRACT for a distance of 1134.10 feet to a point in the Westerly right-of-way line of Ocean Boulevard (State Road A1A); thence run South 0•09'07" East for a distance of 82.59 feet to a point of curvature; thence run Southerly along the arc of a curve concaved to the Southwest having a radius of 1412.69 feet and a central angle of 3•03'00" for a distance of 75.20 feet to a point of tangency; thence run South 2•53'53" West for a distance of 176.28 feet to a point of curvature; thence run Southwesterly along the arc of a curve concaved to the Northwest having a radius of 2968.36 feet and a central angle of 2•27'30" for a distance of 127.36 feet to a point of compound curvature; thence continue Southwesterly along the arc of a curve, concaved to the Northwest having a radius of 158.68 feet and a central angle of 86•26'30" for a distance of 239.40 feet to a point of tangency; thence run North 88•12'07" West along the North line of Southern Boulevard (State Road 80) for a distance of 1040.43 feet to the POINT OF BEGINNING;

and

The West one-half (W 1/2) of Lot 20 and the South 15 feet of the East one-half (E 1/2) of Lot 20 and the South 15 feet of the West one-half (W 1/2) of Lot 21, all in BINGHAM-COPP TRACT, a subdivision in the Town of Palm Beach, Palm Beach County, Florida, as recorded in Plat Book 18, Page 6, Palm Beach County Public Records;

Together with an easement for the use of the tunnel as described in that certain Quit Claim Easement Deed recorded in Official Record Book 2327, Page 1970 of the Palm Beach County Public Records;

and

The South 358.00 feet of the North 403.00 feet of the South 1170.00 feet of Government Lot 2, Section 35, Township 43 South, Range 43 East, Palm Beach County, Florida, lying East of Ocean Boulevard (State Road A1A) as now laid out and in use; together with all riparian and littoral rights, if any, thereunto appertaining.

3

STATE OF FLORIDA

COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me this *10* day of *August*, 1993, by Robert J. Doney, the Town Manager of The Town of Palm Beach, a Florida municipal corporation, on behalf of the corporation. He is personally known to me or has produced Florida Driver's License Number _____ as identification and who did not take an oath.

_____
Signature of Notary Public

_GRACE T. PETERS_
Printed Name of Notary Public

Commission No.: _CC261231_

Commission Expires:

OFFICIAL NOTARY SEAL
GRACE T PETERS
COMMISSION NO. CC261231
MY COMMISSION EXP. MAR. 27, 1997

STATE OF _New York_

COUNTY OF _New York_

The foregoing instrument was acknowledged before me this *21* day of *July*, 1993, by Donald J. Trump, President of The Mar-a-Lago Club, Inc., a Florida corporation, on behalf of the corporation. He is personally known to me or has produced _his_ Driver's License Number _T-187 93-35181-79406446_ as identification and who did not take an oath.

_____
Signature of Notary Public

_Norma I. Foerderer_
Printed Name of Notary Public

Commission No.: _31-4743494_

Commission Expires: _9/30/93_

NORMA I FOERDERER
Notary Public, State of New York
No. 31-4743494
Qualified in New York Co··
Commission Expires Sept. 30, 1993

11

ORB ⸱ 71 Pg 816

STATE OF _____New York_____

COUNTY OF _____New York_____

    The foregoing instrument was acknowledged before me this 31st day of _____July_____, 1993, by **Donald J. Trump**, who is personally known to me or has produced _____his_____ Driver's License Number TB7-93-35181-79406444 as identification and who did not take an oath.

_____
Signature of Notary Public

_____Norma I. Foerderer_____
Printed Name of Notary Public

Commission No.: 31-4743A494

Commission Expires: 9/30/93

NORMA I FOERDERER
Notary Public, State of New York
No. 31-4743494
Qualified in New York Co···
Commission Expires Sept. 30, 1993

APPROVED AS TO FORM AND
LEGAL SUFFICIENCY FOR THE
TOWN OF PALM BEACH

By: _____
    John C. Randolph, Esq.

12

## CONSENT AND JOINDER OF MORTGAGEE

The below referenced Mortgagee hereby consent to the Declaration of Use Agreement and its recordation.

MORTGAGEE

_Herbert A. Kolben_
_Eric J. Ekeroth_

By: _____
~~Vie~~ Vie-President

District
~~STATE~~ OF _Columbia_
City
~~COUNTY~~ OF _Washington_

_April_    The foregoing instrument was acknowledged before me this ___ day of
_____ , 199_5_ by _Thomas C. Perkins_ , of _The Union Labor Life Ins. Co._
on behalf of the _____ . _Perkins_ is personally known to me or has
produced _____ Driver's License Number _____
as identification and who did not take an oath.

_Lavolya R. Williams_
Signature of Notary Public

_Lavolya R. Williams_
Printed Name of Notary Public

Lavolya R. Williams
Commission No.:    Notary Public, District of Columl
My Commission Expires Nov. 14, 1

Commission Expires:

13

## EXHIBIT "A"

Being all that part of the North 610.00 feet of the South 1170.00 feet of Government Lot 2 of Section 35, Township 43, South, Range 43 East, in the Town of Palm Beach, Palm Beach County, Florida, lying West of Ocean Boulevard (State Road A1A) Right of Way and more particularly described as follows, to-wit:

Beginning at a point on the West face of an existing seawall on the East shore of Lake Worth, which point is 560.00 feet North of, measured at right angles, to the South line of Government Lot 2 of said Section 35; thence North 6•09'22" West along the West face of said seawall for a distance of 77.32 feet; thence North 10•23'23" East along the West face of said seawall for a distance of 539.50 feet to a point in the South line of BINGHAM-COPP TRACT, a subdivision recorded in Plat Book 18, Page 6, Palm Beach County Public Records; thence run South 88•12'07" East along the South line of said BINGHAM-COPP TRACT for a distance of 1134.10 feet to a point in the Westerly right-of-way line of Ocean Boulevard (State Road A1A); thence run South 0•09'07" East for a distance of 82.59 feet to a point of curvature; thence run Southerly along the arc of a curve concaved to the Southwest having a radius of 1412.69 feet and a central angle of 3•03'00" for a distance of 75.20 feet to a point of tangency; thence run South 2•53'53" West for a distance of 176.28 feet to a point of curvature; thence run Southwesterly along the arc of a curve concaved to the Northwest having a radius of 2968.36 feet and a central angle of 2•27'30" West for a distance of 127.36 feet to a point of compound curvature; thence continue Southwesterly along the arc of a curve, concaved to the Northwest having a radius of 158.68 feet and a central angle of 86•26'30" for a distance of 239.40 feet to a point of tangency; thence run North 88•12'07" West along the North line of Southern Boulevard (State Road 80) for a distance of 1040.43 feet to the POINT OF BEGINNING, containing 16.3760 Acres, more or less;

and

The West one-half (W 1/2) of Lot 20 and the South 15 feet of the East one-half (E 1/2) of Lot 20 and the South 15 feet of the West one-half (W 1/2) of Lot 21, all in BINGHAM-COPP TRACT, a subdivision in the Town of Palm Beach, Palm Beach County, Florida, as recorded in Plat Book 18, Page 6, Palm Beach County Public Records, containing 0.1894 acres, more or less;

Together with an easement for the use of the tunnel under South Ocean Boulevard (State Road A1A) as described in that certain Quit Claim Easement Deed recorded in Official Record Book 2327, Page 1970 of the Palm Beach County Public Records;

and

Being the South 358.00 feet of the North 403.00 feet of the South 1170.00 feet of Government Lot 2, Section 35, Township 43 South, Range 43 East, Palm Beach County, Florida, lying East of Ocean Boulevard (State Road A1A) as now laid out and in use; together with all riparian and littoral rights, if any, thereunto appertaining.

14

## LEGAL DESCRIPTION

ORB 8691 Pg 819

A parcel of land lying within the North 610.00 feet of the South 1170.00 feet of Government Lot 2 of Section 35, Township 43 South, Range 43 East in the Town of Palm Beach, Palm Beach County, Florida, lying West of Ocean Boulevard (S.R. AIA) Right-of-Way and more particularly described as follows, to wit:

Commencing at a point in the West face of an existing seawall on the East shore of Lake Worth, which point is 560.00 feet North of, measured at Right Angles to, the South line of Government Lot 2 of said Section 35; Thence S 88° 12' 07" E, parallel to said South line of Government Lot 2 (all other bearings refer thereto) a distance of 443.27 feet, to the Point of Beginning of the centerline of a strip of land being 12 feet in width; thence N 15° 22' 28" E along said centerline, a distance of 58.28 feet to a point hereinafter called Point 'A' and the Point of Termination of said centerline.

### TOGETHER WITH

Beginning at the above described Point 'A'; Thence S 88° 58' 21" E a distance of 8.37 feet; Thence N 01° 01' 39" E a distance of 20.0 feet; Thence N 88° 58' 21" W a distance of 20.0 feet; Thence S 01° 01' 39" W a distance of 20.00 feet; Thence S 88° 58' 21" E a distance of 11.63 feet; To the Point of Beginning.

### CERTIFICATION

(NOT VALID UNLESS SEALED WITH EMBOSSED SURVEYOR'S SEAL)

I HEREBY CERTIFY that the Description and Sketch of the property shown hereon was completed under my direction on _MAY 27, 1993_, and that said description is true and correct to the best of my knowledge and belief.

I FURTHER CERTIFY that this Description and Sketch meets the MINIMUM TECHNICAL STANDARDS FOR SURVEYS set forth by the FLORIDA BOARD OF LAND SURVEYORS pursuant to Section 472.027 Florida State Statutes, NO SEARCH OF THE PUBLIC RECORDS has been made by this Office. The description is based on information furnished by client or client's representative.

Date of Signature   _5-27-93_

_Franklin A. Shutts_
Franklin A. Shutts
Registered Land Surveyor
Florida Certificate No. 2780

RECORDER'S MEMO: Legibility of document unsatisfactory when received.

This legal description is to be attached to and made a part of the sketch.

| F.S. | NOTEBOOK NO. PG. | **Hutcheon Engineers** A DIVISION OF KIMLEY-HORN AND ASSOCIATES, INC. © 1983 KIMLEY-HORN AND ASSOCIATES, INC. 4431 EMBARCADERO DRIVE, WEST PALM BEACH, FL 33407 WEST PALM BEACH    STUART | DATE 5-27-93  FILE & DWG NO. 93-1-7485.00 | SHEET 1 of 2 |

ORB 5491 Pg 320



20.00'
N88°58'21"W

20.00'
S00°01'39"W

N01°01'39"E
20.00'

S88°58'21"E
20.00'

11.63'      8.37'
POINT 'A'
TERMINUS POINT OF
112' STRIP

N16°09'22"W 71.32'

EXISTING SEAWALL

LAKE WORTH

MAR·A·LAGO

N15°22'28"E 58.28'

& 112' STRIP

443.27'
S88°12'07"E

POINT OF BEGINNING

POINT OF
COMMENCE-
MENT

90°00'00"

560'

90°00'00"

SOUTHERN BLVD.

S88°12'07"E
SOUTH LINE GOV'T. LOT 2 7   SEC. 35, TWP. 43 S0., RGE. 43 E.
SEC. 2, TWP. 44 S0., RGE. 43 E.

NOTE: THIS DRAWING DOES NOT REPRESENT A FIELD
SURVEY AND IS BASED ON OFFICE INFORMATION ONLY.

This sketch is to be attached to and made a part of the legal
description.

| SCALE 1" 10' | NOTEBOOK NO.   PG. | **Hutcheon Engineers** A DIVISION OF KIMLEY–HORN AND ASSOCIATES, INC. © 1983 KIMLEY-HORN AND ASSOCIATES, INC. 4431 EMBARCADERO DRIVE, WEST PALM BEACH, FL. 33407 WEST PALM BEACH                    STUART | DATE 5-27-93 PROJ. & FILE NO. 93-1-7485.00 | SHEET 2 of 2 |
|---|---|---|---|---|
| BY F.S. | | | | |

ORB   RↃ4Ↄ91 Pg  821
DOROTHY H.    ENⅰ CLERK PB COUNTYⅰ FL

EXHIBIT "C"

## WOODBRIDGE ROAD MITIGATION SPECIFICATION

1.      Construct a 6'0" high solid, concrete block and stucco wall adjacent to the Loomis southern property line continuing along the Mar-a-Lago property line until it intersects the seawall at its western limits.  This wall will be wholly constructed on Mar-a-Lago property.

2.      To remove the Australian pine hedge and fence currently in place behind the Loomis property on an East/West axis.

3.      To install a solid hedge row of Mimusops Roxberghiana (kanapali) or Conocarpus Erectus (silver buttonwood) var, sercius, the genus and species to be decided upon based on the availability at the time of installation.  The hedge row will be 12' (twelve feet) at the time of planting.  Spacing of plant materials will follow sound horticultural practices usual for the species selected in order to maximize the potential growth characteristics of each plant consistent with the buffering objective (i.e., Mimusops, 2 plants per hold at 30" o.c., buttonwood double staggered row at 4' o.c., calophyllum, 5' o.c.)

4.      A setback from the wall to the hedge row material, consistent with the location of the footing and its width.  A 24-36" setback is anticipated.

5.      A maintained height of 20' (twenty feet) maximum, with periodic pruning during the warmer months on a twice yearly basis or more frequently if necessary to encourage growth and density.  The minimum maintained height of 12' (twelve feet) used at installation, will be used as a minimum maintained height during pruning operations.

6.      That maintenance of the hedge will follow a prescribed schedule of fertilization; 4 times per year with an approved 50% organic 12-16-8 or equivalent formula which may vary with seasonal needs.

7.      Existing plant materials beyond the Loomis property in the buffer (moving in a westerly direction) will be retained unless they are in the way of construction.  Some specimen trees in the rear yards of the neighboring properties are greater than 30' (thirty feet) in height.  It would be almost impossible to replace this existing buffer.  Replace current 4-1/2 to 5' Ficus Nitida hedge with a 6' concrete block wall as previously described.

8.      Further West from the existing 30' hedge, to continue the 6' masonry wall to the seawall while installing a 6' Ficus Nitide hedge on the South side of the hedge beyond the staff quarters building.

17

<u>APPLICATION FOR SPECIAL EXCEPTION NO.</u>

TO THE TOWN COUNCIL OF THE TOWN OF PALM BEACH:

The undersigned requests that a Special Exception to the Zoning Ordinance be granted with respect to the following property, described as:

> See Exhibit "A" attached and incorporated herein by reference.

The Special Exception requested is as follows:

> An Amendment to the Declaration of Use Agreement by The Town of Palm Beach, The Mar-a-Lago Club, Inc. and Donald J. Trump dated August 10, 1993 to eliminate (a) all conditions thereunder which have been discharged fully and (b) all regulations thereunder which do not apply to other private clubs in the Town of Palm Beach.

RECEIVED

MAY 1 0 1996

TOWN OF PALM BEACH
BUILDING & ZONING

The following are the reasons why such Special Exception should be granted:

> See Exhibit "B" attached and incorporated herein by reference.

Respectfully submitted,
The Mar-a-Lago Club, Inc.

By: _____
Applicant
Paul Rampell, as Attorney

The Mar-a-Lago Club, Inc.
Fee Simple Property Owner
(or its duly authorized
Attorney, if not applicant)

Provide herein name of person who can receive service of process for purposes of litigation in Palm Beach County ___Paul Rampell, Esq., 125 Worth Avenue, Palm Beach, FL 33480___

Copies mailed to adjacent and nearby property owners on, or before, _____ ____, 1996 as certified by:

_____
Building Official,
Town of Palm Beach

**EXHIBIT** ___2___

Exhibit "B" to
Application for Special Exception No. _____
by The Mar-a-Lago Club, Inc.

Compliance with Schedule of Use Regulations, Section 4.2, Accessory Uses, Section 6.10, and
Special Exception Uses, 6.4 of Appendix A, "Zoning",
Code of Ordinances of the Town of Palm Beach

1.     This Application is submitted on behalf of The Mar-a-Lago Club, Inc. and its membership (the "Club").

2.     On or about August 10, 1993, the Town of Palm Beach, The Mar-a-Lago Club, Inc. and Donald J. Trump entered into a Declaration of Use Agreement (the "Agreement").

3.     The Agreement contains many conditions precedent to the issuance of a Certificate of Occupancy by the Town of Palm Beach.  After intense scrutiny by various officials of the Town, the Club received a Certificate of Occupancy on April 6, 1995.  The Club satisfied the following conditions precedent and now such conditions (and clauses relating thereto) are superfluous to the Agreement and therefore should be eliminated by Amendment.  These conditions precedent include the following:

SECTION OF AGREEMENT                    CONDITION

Page 3, Article IV, Paragraph 2                  "The existing sewage overflow
                                                (manually valved) shall be eliminated by the
                                                Owner at the Owner's expense. The Town
                                                and the Owner shall calculate the sewage
                                                generation utilizing generally accepted
                                                engineering methodology. If it is reasonably
                                                determined by the Town engineer that the
                                                existing pump station needs to be upgraded
                                                or replaced, it shall be upgraded or replaced
                                                by the Owner."

4

| SECTION OF AGREEMENT | CONDITION |
|---|---|
| Page 3, Article IV, Paragraph 3 | "The air-conditioning condensate presently discharging into the sanitary sewer system shall be rerouted by the Owner into the storm sewer system." |
| Page 3, Article IV, Paragraph 4 | "Exfiltration trenches subject to approval by the Town engineer shall be constructed along a portion of the perimeter of the Phase B parking area as depicted in the Plan, and intermittently along the soil stabilized cart path to dispose of any increase in stormwater runoff from those improvements." |
| Page 3, Article IV, Paragraph 5 | "The existing tunnel to the beach area shall be evaluated for structural soundness by a Florida registered engineer and shall be improved as required." |
| Page 4, Article IV, Paragraph 6 | "All applicable building, fire, and life safety codes shall be complied with prior to the commencement of Club operations. The Owner shall install an onsite fire hydrant as required by the Standard Fire Prevention Code. The Owner shall install an approved fire detection and extinguishing system." |
| Page 4, Article IV, Paragraph 7 | "All conditions herein are required to be met prior to commencement of Club operations and prior to the issuance of a Certificate of Occupancy for operation of a Club use." |
| Page 4, Article VI | "The Owner shall install a solid masonry wall and landscaping along the Northern perimeter of the Land to serve as a noise and light buffer for the residents of Woodbridge Road, according to the specifications attached hereto and made a part hereof as Exhibit "C". Owner shall post surety in the amount of One Hundred Thirty- |

| **SECTION OF AGREEMENT** | **CONDITION** |
|---|---|
| | Five Percent (135%) of the cost of the improvements to be installed.  The amount of the surety shall be provided through cost estimates from the Owner and shall be subject to approval by the Town.   The mitigation set forth herein shall be completed prior to commencement of Club operations and prior to issuance of the Certificate of Occupancy for Club use." |
| Page 5, Article VIII, Paragraph 3 | "The Club shall install, prior to commencement of Club operations and prior to issuance of a Certificate of Occupancy for Club use, a northbound left-turn storage lane to serve the Club's entrance drive on Ocean Boulevard, subject to obtaining a permit from the Florida Department of Transportation. The Town, Owner, and Club jointly shall obtain such permit at the sole expense of the Owner and the Club, and..." |
| Page 6, Article VIII, Paragraph 7 | "A gate West of the existing Southern Boulevard gate shall be provided prior to commencement of Club operations and receipt of an occupational license for Club use, and shall be aesthetically identical to the existing gate, and..." |
| Page 6, Article VIII, Paragraph 8 | "Any grass areas to be used for parking as well as the existing cart path shall be stabilized with 'grass-crete' or an equivalent treatment. Said cart path shall be eighteen (18) feet in width." |

6

4. The Club is subject to multiple regulations which apply to it alone and no other private club in the Town of Palm Beach. These regulations as imposed upon the Club over time are discriminatory, unfair and unconstitutional. Moreover, they bear no reasonable relationship to public policies of the Town of Palm Beach. The regulations only applicable to The Mar-a-Lago Club exist throughout the Agreement; the following are examples of such regulations which should be terminated:

| SECTION OF AGREEMENT | REGULATIONS |
|---|---|
| Page 2, Article II, Paragraph 2 | The number of guest suites should not be limited to ten (10). Kitchen or other food preparation facilities should be allowed in guest suites. The use of guest suites should not be limited to a maximum of three (3) non-consecutive seven (7) day periods by any one member during the year.<br><br>(The Everglades Club has guest suites which are not subject to any such regulations.) |
| Page 3, Article II, Paragraph 4 | The unique prohibitions and/or regulations of photography at the Club should be eliminated.<br><br>(Photography of various kinds occurs at all of the other clubs.) |
| Page 3, Article III | The Club should not be singled out by the Town of Palm Beach to maintain unity of title.<br><br>(The Town need not address title unity since any potential subdivision of Mar-a-Lago is now subject to approval by the National Trust for Historic Preservation.) |
| Page 5, Article VII, Paragraph 1 | The limitation of membership in the Club to 500 members should be abolished.<br><br>(Club Colette, The Bath & Tennis Club, The Everglades Club and The Sailfish Club each have over 500 members; some on information and belief have over 1000 members. The Mar-a-Lago Club has more covered square footage and land area than most of these clubs.) |

7

| SECTION AGREEMENT | REGULATIONS |
|---|---|
| Page 5, Article VII, Paragraph 3 | Advance reservations for the uses of Club facilities should not be required. |
| Page 5, Article VIII, Paragraphs 1 and 2 | The limitation of automotive trips at the Club and traffic monitoring should be eliminated.<br>(Since its opening, the Club has not caused traffic problems of any kind on either South Ocean Boulevard or Southern Boulevard.) |
| Page 5, Article VIII, Paragraph 4 | The utilization of a shuttle van to transport a portion of the Club's staff should not be mandated. |
| Page 6, Article VIII, Paragraph 6 | The regulations pertaining to special events should be eliminated including, without limitation, the limit of 390 individuals per special event.<br>(Mar-a-Lago easily accommodates more than 390 individuals and no other club's events are subjected to such a limit.) |
| Page 6, Article VIII, Paragraph 8 | The provision for 252 parking spaces should be eliminated.<br>(The Club shall always meet parking requirements within the Code of Ordinances: 1 parking space for every 4 members.) |
| Page 6, Article IX, Paragraph 1 | The provision regarding the payment of real estate taxes, maintenance, insurance and similar expenses by Donald J. Trump.<br>(The Town of Palm Beach should not regulate the internal financial operation of the Club. Mr. Trump has and will continue to pay all such expenses.) |
| Page 6, Article IX, Paragraph 2 | The requirement of a separate fiduciary account into which ten percent of all gross revenues from guest suites shall be deposited and used for maintenance and |

8

<u>SECTION OF AGREEMENT</u>                    <u>REGULATIONS</u>

restoration should be eliminated.
(Again, the Town should not regulate
the internal financial operation of the Club.)

5.     None of the above conditions or regulations apply to the Bath & Tennis Club, Club Colette, The Everglades Club, The Palm Beach Country Club, The Poinciana Club or The Sailfish Club.

6.     All of the clubs in the Town of Palm Beach should be regulated equally by the same provisions of the <u>Code of Ordinances</u> of the Town of Palm Beach. The <u>Code of Ordinances</u> provides ample, even abundant, regulation of The Mar-a-Lago Club and all other clubs to protect the public interest. If the Club seeks physical changes in the future, it remains subject to the process of application for special exception.

7.     The Mar-a-Lago Club has proven to be beneficial to the Town of Palm Beach. Many of the above regulations were imposed upon the Club in anticipation of supposed traffic congestion to be caused by the Club on South Ocean Boulevard or Southern Boulevard. No such traffic congestion has occurred and, therefore, over-reactive regulations relating thereto should cease. The Mar-a-Lago Club is able to manage vehicular traffic, through its elongated, dual-lane driveways and valet service, better than any other club in the Town of Palm Beach. Members and guests at the Club demand and receive first-class, convenient service.

8.     The Mar-a-Lago Club is the only private social club in the Town of Palm Beach which makes an explicit policy against discrimination on the basis of race, color, religion, gender, national origin, handicap, age or marital status.

Members and guests of every ancestry are welcome. The membership in the Club is heterogeneous. The application of the above regulations to The Mar-a-Lago Club and its members, and the inapplicability of such regulations to any other club (including restrictive clubs), in itself is discriminatory against the heterogeneous Club membership. Therefore, any and all such regulations should be eliminated or, in the alternative, must be made to apply equally to all other Palm Beach clubs.

PAUL RAMPELL

ATTORNEY

125 WORTH AVENUE

SUITE 202

PALM BEACH, FLORIDA 33480-4466

———

(407) 833-1116

FAX (407) 659-0105

October 1, 1996

John C. Randolph, Jr., Esq.
Jones, Foster, Johnston & Stubbs, P.A.
Flagler Center Tower, 11th Floor
505 South Flagler Drive
West Palm Beach, FL 33402-3475

Re:   The Mar-a-Lago Club; Application for Special Exception No. 18-96

Dear Skip:

On behalf of The Mar-a-Lago Club, I respectfully request that Lesly S. Smith, as Town Council President and member, and you, as Town Attorney, recuse yourselves from further proceedings in the Club's Application for Special Exception No. 18-96.

Mrs. Smith holds equity in and therefore is an owner of two (2) clubs, The Bath & Tennis Club and The Everglades Club, which compete with The Mar-a-Lago Club. If either of these clubs suffer a deficit or decline in value because of increased competition by The Mar-a-Lago Club, Mrs. Smith could face financial effects. You are a member of The Sailfish Club and have been since 1983; it appears that you are a proprietor through some co-operative ownership arrangement. It does seem that you similarly could face a financial effect if our Application is approved.

I enclose copies of the 1992 and 1995 annual reports of The Everglades Club. Stockholder equity increased as of June 30, 1992, prior to the opening of The Mar-a-Lago Club. Stockholder equity decreased as of June 30, 1995, after the opening of The Mar-a-Lago Club.

In complete contrast, neither Councilmember Jack McDonald nor Leslie Shaw own any interest of any kind in The Mar-a-Lago Club. When they visit Mar-a-Lago, they do so as patrons only. Any increase in dues is subject to an annual ceiling of 10%. Messrs. McDonald and Shaw can vote on our Application according to Florida law and the State of Florida Commission on Ethics. Nevertheless, you repeatedly attempt to embarrass these individuals by examining, re-examining and cross-examining them and encouraging others who cast aspersions on their genuine independence. In the past, they sometimes have voted in favor of our applications and sometimes in opposition to our applications. Mrs. Smith consistently votes against The Mar-a-Lago Club.



EXHIBIT ___

John C. Randolph, Jr., Esq.
October 1, 1996
Page Two


The procedural and rhetorical irregularities at the September 16, 1996 Town Council meeting make it clear that Mrs. Smith and you are railroading, not running, a quasi-judicial hearing. Almost each and every question or comment made by either of you reflected a design to defeat Application for Special Exception No. 18-96. The plain predisposition both of you maintain against our Application is prejudicial to a fair and impartial decision.

Very truly yours,

Paul Rampell

Enclosures

cc:   The Mar-a-Lago Club
      Donald J. Trump
      Mayor Paul R. Ilyinsky
      The Honorable Jack McDonald
      The Honorable Samuel C. McLendon
      The Honorable Allen S. Wyett
      The Honorable Leslie A. Shaw
      The Honorable Lesly S. Smith
      Robert L. Moore, Director of Planning, Building and Zoning

ATTORNEY
125 WORTH AVENUE
SUITE 202
PALM BEACH, FLORIDA 33480-4466

(561) 833-1116
FAX (561) 659-0105

November 1, 1996

John C. Randolph, Jr., Esq.
Jones, Foster, Johnston & Stubbs, P.A.
Flagler Center Tower, 11th Floor
505 South Flagler Drive
West Palm Beach, FL 33402-3475

Re:   The Mar-a-Lago Club; Application for Special Exception No. 18-96

Dear Skip:

On behalf of The Mar-a-Lago Club, I respectfully request that Paul R. Ilyinsky, as Mayor, Lesly S. Smith, as Town Council President and Member, and you, as Town Attorney, recuse yourselves from further proceedings in the Club's Application for Special Exception No. 18-96.

All of you are acting in quasi-judicial capacities in these hearings.  In essence, Mr. Ilyinsky, Mrs. Smith and you are "quasi-judges".  As quasi-judges, all of you should abide by the Code of Judicial Conduct which provides, in Canon 2, that:

> A judge should not hold membership in an organization
> that practices invidious discrimination on the basis of race,
> sex, religion, or national origin.

Since Mr. Ilyinsky is a member and equity owner of The Bath & Tennis Club, Mrs. Smith is a member and equity owner of The Bath & Tennis Club and The Everglades Club, and you are a member and co-operative owner of The Sailfish Club, and all of you are all-too-familiar with the practices of these clubs, you could avoid impropriety in the future if you recused yourselves.

Very truly yours,

Paul Rampell

cc:   The Mar-a-Lago Club
      Donald J. Trump
      Mayor Paul R. Ilyinsky
      The Honorable Jack McDonald
      The Honorable Samuel C. McLendon
      The Honorable Allen S. Wyett
      The Honorable Leslie A. Shaw
      ι The Honorable Lesly S. Smith
      Robert L. Moore, Director of Planning, Building and Zoning



# TOWN OF PALM BEACH

Planning, Zoning & Building Department

November 27, 1996

Mr. Paul Rampell, Esq.
125 Worth Avenue
Palm Beach, FL  33480-4466

Subject: Special Exception #18-96, Mar-a-Lago Club, 1100 South Ocean Boulevard

Dear Mr. Rampell:

After public hearings held on September 16, 1996, October 10, 1996 and October 11, 1996, the Town Council at its meeting of November 20, 1996, took the following action regarding the above referenced application.

1.   Art II, Paragraph 4, on page 3 of the Agreement may be amended to change the photography limitations at the Club to be consistent with the Schedule of Use Regulations provided for the R-AA district.   The new proposed revision would reference that section of the Zoning Ordinance.

2.   Article VII, paragraph 3, on page 5 of the Agreement may be amended to remove the requirement for advance reservations for the uses of the Club facilities.

3.   Article IX, paragraph 2, on page 6 of the Agreement may be amended to contingently eliminate the requirement of a separate fiduciary account into which ten (10) percent of all gross revenues from the guest suites shall be deposited and used for the maintenance and restoration.   The proposed language allowing for the elimination of the fiduciary account is applicable only in the event the ownership of the Club remains with Mr. Trump with the proviso that the requirement would otherwise remain.

Other than as set forth above, the Town Council denied the application in the manner reflected in the transcript of the meeting, thereby requiring that all other requirements set forth in the Mar-a-Lago Club Declaration of Use Agreement shall remain in effect.

EXHIBIT ____

In the event that the amendments approved by the Town Council are not acceptable to the applicant, the original conditions in the Agreement relating to the modifications that the Town Council approved will remain in effect.

Prior to drafting the approved changes in the Agreement, the Town needs written confirmation that you agree to said changes. Also be advised that the original Agreement will remain in full effect until such time that the Town receives such written confirmation, and the Agreement is executed and recorded in the public records of the Clerk of Palm Beach County.

The changes in the Agreement authorized under this Special Exception must be commenced or implemented within one year from the date of approval or said approval will expire.

If you have any question, please feel free to contact me at your convenience.

Sincerely,

Paul Castro, AICP
Zoning Administrator

CC:   Robert J. Doney, Town Manager
      Robert L. Moore, Director of Planning, Zoning and Building
      John C. Randolph, Town Attorney
      Mary Pollitt, Town Clerk
      Harry P. Ackerman, Chief Building Inspector
      pf

2



IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN
AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO. **CL 96 010812** *At*

MAR-A-LAGO CLUB, L.L.C., L.C.,       )
                                     )
           Plaintiff,                )
                                     )
v.                                   )          *12-20-96*
                                     )          *ROBERT ~~DOWN~~ DONEY*
TOWN OF PALM BEACH,                 ,)          *4:20 pm.*
                                     )
           Defendant.                )
_____ )          *CPS #414*
                                                *GEORGE ESTORNELL*

                              **SUMMONS**

THE STATE OF FLORIDA:
To Each Sheriff of the State:

          YOU ARE COMMANDED to serve this Summons and a copy of the
Complaint in this action on Defendant:


TO DEFENDANT:  **TOWN OF PALM BEACH**
               by serving: Mayor Paul R. Ilyinsky or the vice mayor or any member
               of the town council

               360 South County Road
               Palm Beach, FL  33480


Each Defendant is required to serve written defenses to the Complaint or Petition on

Mark F. Bideau, Esquire, Plaintiff's attorney, whose address is:


               Greenberg Traurig
               777 South Flagler Drive
               Suite 310-E
               West Palm Beach, FL 33401



**This notice is provided pursuant to Administrative Order No. 2.031-9/96**

**In accordance with the Americans with Disabilities Act, persons in need of a special accommodation to participate in this proceeding or to access a court service, program or activity shall, within a reasonable time prior to any proceeding or need to access a service, program or activity, contact the Administrative Office of the Court, 205 North Dixie Highway, Room 5.2500, West Palm Beach, Florida 33401, telephone (561) 355-2431, or 1-800-955-8771 (TDD), or 1-800-955-8770 (V), via Floride Relay Service.**

## SPANISH

**De acuerdo con el Acta de los Americanos con Impedimentos, aquellas personas que necesiten de algún servicio especial para participar en este proceso o tener acceso a servicios, programas ó actividades de la Corte deberán, dentro de un período rasonable antes de cualquier proceso o de tener necesidad de acceso a servicios, programas ó actividades, ponerse en contacto con la Oficina Administrativa de la Corte, que está situada en el 205 N. Dixie Highway, oficina número 5.2500, West Palm Beach, Florida 33401, ó a los teléfonos (561) 355-2431 ó 1-800-955-8771 (TDD) y si usa el servicio Florida Relay Service al 1-800-955-8770 (V).**

## CREOLE

**D'aprè akô ki té fet avek Akt Pou Amérikin ki Infim, tout moun ki genyen yon bézwen éspesyal pou akomodasyon pou yo patisipé nan pwosè obyen pou gin aks. Sèvis, pwogram ak aktivité tibinal-la, dwé nan yon tan rézonab anvan okin pwosè oubyen bezwen aksè sèvis, pwogram oubyen aktivitè fet, yo dwé konta Ofis Tribinal-la ki nan 205 North Dixie Highway, Cham 5.2500, West Palm Beach, Florida 33401, niméro téléfonn-nan sé (561) 355-2431, ou byen 1-800-955-8771 (TDD) ou byen 1- 800-955-8770 (V) an pasan pa Florida Relay Service.**

## FRENCH

**En accordance avec l'Acte Pour les Américains Incapacités, les personnes en besoin d'une accommodation spéciale pour participer á ces procédures,ou bien pour avoir accès au service, progamme, ou activité de la Court doivent, dans un temps raisonable, avant aucune procedures ou besoin d'accès de service, programme ou activité, contacter l'Office Administrative de la Court, situé au numéro 205 North Dixie Highway, chambre 5.2500, West Palm Beach, Florida 33401, le numéro de téléphone (561) 355-2431, ou 1-800-955-8771 (TDD), ou 1-800-955-8770 (V) ou par Florida Relay Service.**